# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

KIMBERLY ROBINSON,      )
                                    )

           Petitioner,      )
v.                                )      Nos.:  3:17-cv-341-TAV-HBG
                                      )              3:13-cr-71-TAV-HBG-6

UNITED STATES OF AMERICA,  )
                                    )

           Respondent.     )

## MEMORANDUM OPINION

Petitioner Kimberly Robinson has timely filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 [Doc. 1].[1]  In her motion, she presents three (3) ineffective-assistance-of-counsel claims.  The government has responded in opposition, arguing that each of Petitioner's claims is without merit [Doc. 3].  Because, based on the record, it plainly appears that Petitioner is not entitled to relief, it is not necessary to hold an evidentiary hearing,[2] and Petitioner's motion will be **DENIED**.  Petitioner's untimely motion [Doc. 346, No. 3:13-cr-071] to amend and supplement her § 2255 motion will likewise be **DENIED**.

---

[1]  All docket citations refer to this civil case unless otherwise indicated.

[2]  An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief.  *See* 28 U.S.C. § 2255(b).  It is the prisoner's ultimate burden, however, to sustain her claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required.  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

## I. Background

On June 18, 2013, Petitioner and seven (7) codefendants were charged with conspiracy to distribute five (5) kilograms or more of cocaine and conspiracy to commit money laundering [Doc. 1, No. 3:13-cr-071]. Each of Petitioner's codefendants pled guilty [Docs. 21, 35, 67, 78, 90, 106, 107, No. 3:13-cr-071], but the case against Petitioner, an alleged courier for the cocaine trafficking organization at the behest of codefendant Demond White, proceeded to trial on April 8, 2014. After a three-day trial, a jury found Petitioner guilty of both charges [Doc. 174, No. 3:13-cr-071], and on April 8, 2015, Petitioner was sentenced to 292 months' imprisonment [Doc. 292, No. 3:13-cr-071]. Petitioner filed a direct appeal of her convictions and sentence; the Sixth Circuit affirmed, issuing its mandate on August 26, 2016 [Doc. 333, No. 3:13-cr-071]. *United States v. Robinson*, 656 F. App'x 145 (6th Cir. 2016). Petitioner did not petition the Supreme Court for a writ of certiorari. Petitioner then timely filed the instant motion, seeking relief under 28 U.S.C. § 2255 [Doc. 1].

## II. Legal Standard

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which

2

had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 petitioner has the burden of proving that she is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Claims of ineffective assistance of counsel are cognizable under § 2255. *Massaro v. United States*, 538 U.S. 500, 508–09 (2003). A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). *See also Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, she must identify specific acts or omissions to prove that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (providing that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Second, a petitioner must also establish "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable,

3

does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). Because a petitioner "must satisfy *both* prongs of *Strickland* to obtain relief on an ineffectiveness claim, the inability to prove either one of the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc); *accord Strickland*, 466 U.S. at 697.

## III.    Analysis

Petitioner advances three (3) ineffective-assistance-of-counsel claims in her motion [Doc. 1]. First, she argues trial counsel was ineffective for failing to inform her of an alleged plea agreement offer [*Id.* at 4–5]. Second, she alleges trial counsel failed to adequately investigate the case and present certain evidence [*Id.* at 7–9]. Third, Petitioner claims that trial counsel ineffectively cross-examined government witnesses and presented an inadequate closing argument [*Id.* at 12]. The Court addresses each claim in turn before turning to Petitioner's motion to amend and supplement [Doc. 346, No. 3:13-cr-071].

### A.    Failure to Communicate Plea Agreement Offer

Petitioner's first claim is based on her trial counsel's allegedly deficient performance in the context of plea negotiations [Doc. 1 p. 4]. She claims trial counsel deprived her of her right to effective assistance of counsel by failing to inform her of "the plea agreement offered by the government" [*Id.*].

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 140 (2012).

4

Thus, "[d]uring plea negotiations defendants are 'entitled to effective assistance of competent counsel,'" *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)), and the two-part test set forth in *Strickland* applies. *Id.* at 162–63 (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

### 1.    Deficient Performance

The Supreme Court, in *Missouri v. Frye*, declined to establish a rigid set of rules to govern the highly nuanced process that is plea bargaining. 566 U.S. at 145 ("Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process."). However, based on the facts presented in *Frye*, the Court did define one duty of defense counsel in the plea bargain process, holding that "as a general rule, defense counsel has the duty to communicate *formal* offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 566 U.S. at 145 (emphasis added). Failure to carry out this duty satisfies the first element of the *Strickland* test. *See id.* at 145–47 (finding that defense counsel's failure to communicate a "formal [offer] with a fixed expiration date" to the defendant, resulting in the offer's lapse, constituted deficient performance); *cf. Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) ("A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test."). While the Supreme Court declined to

5

offer a generally applicable definition of a "formal offer" in *Frye*, it did instruct that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations." 566 U.S. at 146. Additionally, it noted that the "formal offer" at issue in *Frye* was set forth in a written letter, provided a choice of two plea agreements, and had a fixed expiration date. *Id.* at 138–39, 145.

Here, Petitioner asserts that trial counsel did not inform her of a "plea agreement offered by the government" [Doc. 1 p. 4]. At first blush, this performance would seem to run afoul of the duty established in *Frye*, satisfying the first element of the *Strickland* test. *See Frye*, 566 U.S. at 145. But, the Court, like the government [Doc. 3 p. 6; Doc. 3-1 ¶ 3 ("At no time did I, on behalf of the United States, extend any plea offer to petitioner or her counsel . . . .")], disagrees with Petitioner's suggestion that the exchange between trial counsel and counsel for the government [Doc. 1 p. 4] constitutes a formal plea agreement offer.

The content of the exchange at issue is undisputed [Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071]. As counsel for the government attests, two (2) days after petitioner was arrested, Petitioner's trial counsel sent an email to counsel for the government, inquiring "about the minimum drug quantity for a plea agreement" [Doc. 3-1 ¶ 4; *see also* Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071]. Counsel for the government "replied that petitioner would need to admit responsibility for at least 50 kilograms of cocaine" [Doc. 3-1 ¶ 4],

which he noted corresponded to "a base offense level of 36 (before acceptance)" [Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071].  No further discussions of a plea were had.

While what constitutes a "formal plea offer" has not yet been settled by the Supreme Court or the Sixth Circuit, this Court finds that the brief exchange here does not amount to a *formal* plea offer that, pursuant to the general rule established in *Frye*, trial counsel was duty bound to communicate to Petitioner.  The parties' entire plea discussion, occurring just days after Petitioner's arrest, consisted of only two very brief emails.[3]  Because this terse discussion did not evolve beyond its nascence or continue past the incipience of the case, the bulk of the terms of any potential plea agreement that the government may have formally offered—terms which would typically require substantial negotiation and compromise (e.g., whether defendant would agree to cooperate, whether the government would recommend a specific sentence, whether the government would agree to dismiss one of the two charges in exchange for a guilty plea)—remained undefined.  Indeed, the brief plea discussion in this case related to only one term of a potential plea agreement:  the drug quantity for which defendant would need to accept responsibility to receive a formal plea offer.  There was no discussion of an offer's expiration date.  So unlike *Frye*, *accord MacLloyd v. United States*, 684 F. App'x 555, 557 (6th Cir. 2017), the evidence here

_____

[3]  The entire exchange at issue was as follows: The first communication, sent from trial counsel to counsel for the government, reads: "Hi David, How much quantity are you willing to hold Robinson responsible for in a plea agreement?" [Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071].  In the second and final communication, counsel for the government responded: "Brian, At least 50 kilos but less than 150 kilos, which would put her at a base offense level of 36 (before acceptance). Dave" [Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071].

establishes that no formal plea agreement offer was ever made [*see* Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071]. *See Ramirez v. United States*, 751 F.3d 604, 607–08 (8th Cir. 2014) (holding that petitioner had received "at most an informal plea offer" where the government sent a letter to defense counsel "merely express[ing] an interest in negotiating" a plea deal in exchange for defendant's cooperation); *Boney v. United States*, Nos. 17-197-CFC & 11-55-CFC, 2020 WL 1333285, at *4 (collecting cases discussing the distinction between formal and informal plea offers in this context); *Young v. United States*, No. 2:13-cv-10108, 2016 WL 5496517, at *2, 7 (S.D. W. Va. Sept. 29, 2016) (concluding that a letter from the government to defense counsel addressing only the offense level to which defendant would be exposed by virtue of a guilty plea and noting that any potential plea agreement offer would include a plea to a conspiracy and substantive count was not a formal plea offer under *Frye*), *aff'd* 685 F. App'x 181, 182 (4th Cir. 2017); *Jordan v. United States*, Nos. 1:09-cv-096 & 1:04-cr-129, 2013 WL 12358431, at *3 (E.D. Tenn. Jan. 2, 2013) (noting that an "oral informal discussion" about a plea and "a preliminary oral plea offer" to the petitioner never amounted to a "formal plea offer" or "written plea agreement"), *aff'd* No. 13-5069, 2013 U.S. App. LEXIS 26244, at *6–7 (6th Cir. July 12, 2013) (unpublished order); *cf. Merzbacher v. Shearin*, 706 F.3d 356, 359, 369–70 (4th Cir. 2013) (rejecting *Strickland* claim for lack of prejudice because the terms of any potential plea agreement, due to the informality of the plea discussion and the plea offer's nascence, could not be ascertained and thus it could not be determined whether an agreement would've been reached and a plea ultimately entered).

Because no formal plea agreement offer was made here, the Court rejects defendant's first claim on the basis that the factual premise of the claim (i.e., that the government offered her a plea agreement [Doc. 1 p. 4]) is plainly contradicted by the record [*see* Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071]. And because there was no formal plea offer, just an informal, preliminary plea discussion, the general rule in *Frye* is not applicable here. *See Frye*, 566 U.S. at 145 ("[A]s a general rule, defense counsel has the duty to communicate *formal* offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." (emphasis added)); *see Shnewer v. United States*, 703 F. App'x 85, 88 n.1 (3d Cir. 2017) (recognizing a body of "emerging case law . . . which appears to expand trial counsel's duty to convey *formal* plea offers . . . to informal offers and even, possibly, to informal plea negotiations"); *Boney*, 2020 WL 1333285, at *4 ("[T]he majority of courts addressing the issue have held that mere informal plea discussions are not enough to trigger counsel's duty to inform."); *Young*, 2016 WL 5496517, at *7 (holding that an informal plea offer "d[id] not fall within *Frye*'s bright-line rule"); *Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *15 (D.N.J. Mar. 7, 2016) ("[M]ere informal plea discussion are not enough to trigger [defense counsel]'s duty to inform [the defendant]."); *Jordan*, 2013 WL 12358431, at *3 (finding that defense counsel's failure to communicate a preliminary oral plea offer to the petitioner, in the absence of a "formal plea offer" or "written plea agreement," did not run afoul of *Frye*'s general rule), *aff'd* 2013 U.S. App. LEXIS 26244, at *6–7 (unpublished order); *cf. Merzbacher*, 706 F.3d at 370 n.4 (noting that *Frye* "encourage[d] prosecutors and judges

to adopt procedures to avoid problems inherent in nascent plea offers," explaining that such procedures "could 'help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences'" (quoting *Frye*, 566 U.S. at 146)).

However, while it seems the plea discussion or offer in this case did not reach a sufficient level of formality or definition to trigger the specific duty established in *Frye*, this does not end the inquiry. The question of what duty, if any, the Sixth Amendment imposes on trial counsel upon receipt of an informal or nascent plea offer or after a preliminary plea discussion—a question which, as discussed, the Supreme Court left unsettled in *Frye*—remains. *See Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019).

Courts have diverged on the issue. *Compare Carmichael v. United States*, 659 F. App'x 1013, 1022 (11th Cir. 2016) ("Although the Government's plea offers were informal, Carmichael's counsel had a continuing obligation to consult with Carmichael regarding important developments, including plea negotiations, in his case. Otherwise, such informal plea negotiations would be unlikely to turn into formal plea offers."), *United States v. Brooks*, Nos. 10-20078 & 14-2624, 2015 WL 5837636, at * 6 (D. Kan. Oct. 6, 2015) ("[T]he Court cannot conclude that defendant may not pursue this claim in the absence of a formal plea from the Government."), *and United States v. Polatis*, No. 2:10-cr-0364, 2013 WL 1149842, at *10 n. 16 (D. Utah Mar. 19, 2013) ("[E]ven if a firm offer is not conveyed to defense counsel, when the government indicates it is willing to negotiate a resolution in a case, defense counsel has a duty to engage in the negotiation process.

10

Counsel can be constitutionally ineffective in the plea negotiation process if they fail to convey to the defendant the government's articulated willingness to resolve a case by negotiation or have proposed a resolution to the case."), *with Shnewer*, 2016 WL 867461, at *15 ("[M]ere informal plea discussions are not enough to trigger [petitioner's counsel's] duty to inform [petitioner]."), *Mavashev v. United States*, No. 11-cv-3724, 2015 WL 1508313, at *11 (E.D.N.Y. Mar. 31, 2015) (holding that "defense counsel's duties with regard to a petitioner's Sixth Amendment right to effective counsel are limited to formal offers"), *and United States v. McCall*, No. C00-00505, 2014 WL 2581353, at *3 (N.D. Cal. June 9, 2014) ("If the law were to hold that every 'informal plea offer' had to be communicated to defendant, then virtually every jury verdict of guilty would be forever dogged by demands for evidentiary hearings under Section 2255, for it would be a rare case in which no conversations ever transpired between counsel. On the other hand, a formal plea offer is a certain thing, and its existence or non-existence can be proven up at an evidentiary hearing as can whether it was communicated.").

In *Byrd v. Skipper*, a panel of the Sixth Circuit was divided as to whether *Frye* "cabined" a defendant's Sixth Amendment's right to effective assistance of counsel in the plea-bargaining process to negotiations occurring after a formal plea offer has been tendered. *Compare* 940 F.3d at 255 (majority opinion) ("The Supreme Court has never cabined that right to negotiations that take place only after an offer has been made."), *with id.* at 261 n.1 (Griffin, J., dissenting) ("*Frye* explicitly cabined this requirement to formal plea offers with a fixed expiration date, leaving open whether it might be different—or not

11

apply at all—in other circumstances." (citing *Frye*, 566 U.S. at 145)).  Emphasizing the fact that, after *Lafler* and *Frye*, there is no question that "the Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding," *id.* at 255 (quoting *Lafler*, 566 U.S. at 163), as well as the Supreme Court's long-standing recognition that "the negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel," *id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)), the majority concluded that the existence "of a more favorable plea offer" is not a threshold requirement to assert a *Strickland* claim due to deficient performance in the plea-bargaining process.  *Id.* at 256 (relying on *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018)).[4]  This conclusion suggests that the Sixth Amendment may have imposed some duty on trial counsel in this case.  But *Byrd*, which is distinguishable from the instant case,[5] does not provide any guidance as to what any such duty may have

---

[4]  *But see Jordan*, 2013 WL 12358431, at *6–7 ("Counsel's representation was not defective.  While defense counsel testified that he received some oral communication from the government about a plea in January or February of 2005, he also testified that no agreement was formalized.  While defense counsel has the duty to communicate formal offers from the prosecution, there is no evidence that a formal plea offer was ever made in this case.  Thus, counsel cannot be said to have been ineffective." (citing *Frye*, 566 U.S. at 145)).

[5]  Here, unlike in *Byrd*, Petitioner is not alleging that trial counsel's ineffective assistance prevented plea negotiations altogether.  Thus, although the *Byrd* majority's conclusion that the Sixth Amendment right to effective assistance of counsel in the plea-bargaining process is not only implicated after a plea offer has been made is instructive here, the precise holding in *Byrd*, which involved such an allegation, is not.  940 F.3d 248, 255–61 (6th Cir. 2019) (applying the following standard: "[B]ecause there is no right to a plea offer, *where a petitioner alleges ineffective assistance of counsel prevented plea negotiations*, demonstrating prejudice requires that he establish a reasonable probability that but for counsel's errors, the petitioner would have received a plea offer" (emphasis added)).

12

entailed.  *See id.* at 255, 260 (finding deficient performance where defense counsel's "blatant incompetence," as evidenced by his "manifest[] . . . shocking lack of comprehension regarding the pertinent law in [the petitioner's] case" "foreclosed the possibility that the prosecution, under the unique facts of this case, could exercise its discretion" to offer a plea to the petitioner).  And the issue of whether defense counsel's failure to inform a defendant of an informal plea offer or preliminary plea discussions falls outside the "prevailing professional norms" is an unsettled question of law.

Ultimately, while this specific issue has not yet been settled, in light of the Sixth Circuit's conclusion that the absence of a formal plea offer does not foreclose a *Strickland* claim in the plea-negotiation context, it seems at least arguable that trial counsel was obligated to inform Petitioner of the informal plea discussion here and that failure to do so may constitute deficient performance.  The Court need not, however, make this determination here, because, as the Court will explain, even assuming trial counsel's alleged[6] failure to communicate the discussion at issue constitutes objectively unreasonable performance, Petitioner cannot show prejudice, and thus, this claim will be denied.

### 2.    Prejudice

The second element of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59; *see also Lafler*, 566 U.S. at 163–64.  To establish prejudice from ineffective

---

[6] The Court notes the lack of evidence in the record as to whether trial counsel informed Petitioner of the plea discussion at issue, but even assuming trial counsel did not, as the Court will explain, this claim is meritless.

13

assistance of counsel in the plea bargaining process, a petitioner must demonstrate "a reasonable probability" that, but for counsel's deficient performance, (1) she would have accepted the plea offer and (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. *See Frye*, 566 U.S. at 147; *Lafler*, 566 U.S. at 168; *Byrd*, 940 F.3d at 256. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Additionally, in a case where "the ineffective advice led not to an offer's acceptance but to its rejection," *Lafler*, 566 U.S. at 163–64 ("Having to stand trial, not choosing to waive it, is the prejudice alleged."), the petitioner must also show that her "conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164; *see also Frye*, 566 U.S. at 147 ("To establish prejudice in this instance, it is necessary to show that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.").

Here, Petitioner, implying that the government offered a plea agreement that included a recommended sentence of sixty (60) months, states she "would have chosen a plea of 60 months" given that she faced "a potential 290–320 months if she lost at trial" [Doc. 1 p. 4]. But her claim relies too heavily on speculation to establish *Strickland* prejudice.

First, the informal plea discussion that occurred in this case does not support Petitioner's unfounded belief that the government would have agreed to recommend a

14

sixty-month sentence [*See* Doc. 3-1 p. 3; Doc. 346 p. 5, No. 3:13-cr-071]. During the parties' brief, informal plea discussion, the government indicated that defendant would need to admit accountability for at least fifty (50) kilograms of cocaine [Doc. 3-1 p. 3]. Under the 2013 United States Sentencing Commission's Guidelines Manual, this drug quantity corresponded to a base offense level of 36 and, with Petitioner's criminal history category (I) [Doc. 205 ¶¶ 36, 51, No. 3:13-cr-071], a guideline imprisonment range of 188–235 months. Thus, the sentence corresponding to the drug-quantity term discussed by the parties was well above the sixty-month sentence Petitioner now claims she would have accepted in a plea agreement. The government also indicated that an acceptance-of-responsibility reduction would be afforded to Petitioner if she pled guilty [*See* Doc. 3-1 p. 3 (noting the drug quantity corresponds to an offense level of 36 "(before acceptance)")]. But even with a full, three-level reduction for acceptance of responsibility, *see* USSG § 3E1.1,[7] resulting in an adjusted offense level of 33, a sentence within the resulting guideline range (135–168 months) would still be more than twice as long as the sentence Petitioner claims she would have accepted in a plea agreement.[8]

---

[7] As discussed *infra*, p. 17–18, the Court questions Petitioner's willingness to accept responsibility for the charged offenses given her repeated insistence as to her innocence.

[8] In her "Amendment to 2255" [Doc. 346 p. 4, No. 3:13-cr-071], Petitioner speculates that if she had pled guilty, she would have also received a two-level reduction because she would have been safety valve eligible. Such a reduction, she notes, would have put her at offense level 31, which corresponds to a guideline imprisonment range of 108–135 months [*Id.*]. Petitioner notes that compared to the sentence she ultimately received this is "a big difference in time" [*Id.*]. Indeed. However, it is not readily apparent that Petitioner would have been safety valve eligible. While she appears to meet some of the requirements, Petitioner would still need to "truthfully provide[] to the Government all information and evidence [she] ha[d] concerning the offense[s]." USSG § 5C1.2. Despite her claims that she was interested in cooperating, the Court questions her

15

Next, the informality and incompleteness of the plea discussion in this case erects a insurmountable hurdle to Petitioner's establishing that a reasonable probability existed that the government would have extended a plea offer that Petitioner would have found agreeable. As numerous other courts have observed, the informal nature and preliminary stage of the plea discussion "inject[] an added layer of conjecture into the prejudice analysis." *Young*, 2016 WL 5496517, at *9; *see, e.g.*, *Merzbacher*, 706 F.3d at 370 (holding that a plea offer's "nascence figures prominently in the calculus" of determining prejudice); *Cook v. United States*, 613 F. App'x 860, 866 (11th Cir. 2015) (noting that "the fact that plea negotiations never advanced to any level of specificity" in concluding that petitioner had "failed to show that he was prejudiced by counsel's ineffective assistance in advising him about the government's position in plea negotiations"); *Ramirez*, 751 F.3d at 607–08 (concluding that the extension of an informal plea offer was insufficient to show "a reasonable probability existed that the government would have extended a plea offer" and thus holding that petitioner failed to establish *Strickland* prejudice). Specifically, as the Fourth Circuit has recognized, a "lack of definition in [a] plea offer makes it substantially harder to determine it likely that a plea acceptable to [the petitioner] would

---

ability and willingness to plead guilty and cooperate given her repeated insistence as to her innocence, including her sworn testimony at trial. *See infra* p. 17–18. Even assuming she were safety valve eligible, the Court notes that this guideline range provides for a sentence that is still significantly longer than sixty (60) months, and the record does not suggest that the government would have offered a plea deal providing for this offense level or a sentence within this range. And, notably, nor does Petitioner state that she would have agreed to accept a plea offer providing for such a sentence—she merely notes that, in retrospect, there is "a big difference in time" between a sentence in this guideline range and the sentence she received [Doc. 364 p. 4, No. 3:13-cr-071].

16

have been 'entered without the prosecution canceling it or the trial court refusing to accept it.'" *Merzbacher*, 706 F.3d at 369–70 (quoting *Frye*, 566 U.S. at 147) (acknowledging, however, that "there may be cases in which a petitioner can show *Strickland* prejudice despite the incipience of the plea offer he did not accept due to his counsel's lack of communication or inadequate advice").

Here, apart from the drug quantity for which defendant would need to accept responsibility—which, given the lack of negotiation, is also far from absolute—the terms of any potential plea agreement are pure speculation. For example, it remains unclear whether a potential plea agreement would have provided for defendant to plead guilty to both charges or just one and if only one, whether the government would agree to dismiss the other. In the same vein, it remains unclear whether the parties would have reached an agreement as to the applicability of the two-level increase for a conviction under 18 U.S.C. § 1956 (i.e., Count Two) [*see* Doc. 205 ¶ 39 (applying USSG § 2S1.1(b)(2)(B))]. This lack of clarity as to the parameters of any potential plea agreement does not allow the Court to find that a reasonable probability existed that the government would have extended a plea offer that Petitioner would have found agreeable. Additionally, because the unknown terms of a potential plea agreement had the potential to impact the calculation of Petitioner's guideline range of imprisonment and likely, as a result, her punishment, the record reveals Petitioner can only speculate, and not carry her burden to establish under *Strickland*, that the acceptance of a particular plea agreement would have resulted in a less severe judgment or sentence.

17

Moreover, the Court notes that even now, the parties take widely divergent positions as to what the terms of a potential plea deal would have been. Petitioner, apparently assuming that the government offered a plea agreement that included a recommended sentence of sixty (60) months—an assumption that the record clearly belies—claims she "would have chosen a plea of 60 months" given that she faced "a potential 290–320 months if she lost at trial" [Doc. 1 p. 4]. Whereas the government strongly contends, "There is no circumstance under which the United States would have offered a plea agreement under which petitioner's sentence would not have exceeded sixty (60) months' imprisonment" [Doc. 3 p. 6]. The parties' persistent disagreement as to the terms of an agreeable plea deal, the Court finds, further undermines a conclusion that a reasonable probability existed that the government would have offered a plea agreement that Petitioner would have accepted.

Lastly, as the government argues, "given her insistence during trial that she was innocent, it is implausible that petitioner would have pleaded guilty pursuant to any plea agreement" [Doc. 3 p. 7]. While the Court recognizes that "a defendant's 'repeated declarations of innocence' alone [do not] preclude the possibility that the defendant would have entered a guilty plea if he had been aware of the consequences of proceeding to trial," *Sawaf v. United States*, 570 F. App'x 544, 549 (6th Cir. 2014) (citations omitted), as several district courts have aptly noted, "[i]n instances where a defendant maintains innocence at trial and testifies in his or her own defense consistent with such innocence, the court must reconcile the apparent inconsistencies between the proffered allegations and the earlier

18

statements." *Clark v. United States*, Nos. 13-765 & 09-33, 2016 WL 963682, at *5 (D. Del. Mar. 10, 2016) (quoting *United States v. Slane*, Nos. 11-81 & 14-938, 2015 WL 728481, at *21 (W.D. Pa. Feb. 19, 2015)). In other words, "a defendant who has actually testified to a jury that he is innocent faces a formidable barrier to convince the court that he really wanted to plead guilty." *Young*, 2016 WL 5496517, at *10 (quoting *Williams v. United States*, No. 4:12-cv-252, 2013 WL 6410015, at *4 (E.D. Mo. Dec. 9, 2013)). Here, Petitioner testified at trial, and while under oath, she repeatedly insisted that she was innocent of the charged offenses [*See, e.g.*, Doc. 307 p. 89, No. 3:13-cr-071]. And even in the instant motion, Petitioner points to evidence of her alleged innocence [Doc. 1 p. 7–9; *see id.* at 20–21]. For this reason, the Court is not convinced that Petitioner would have been willing to plead guilty and accept responsibility for the charged offenses.

In sum, the central problem with this claim is that, based on the plea discussion, the contents of which are undisputed, as well as the record as a whole, Petitioner cannot show a reasonable probability that a plea deal could have been reached by the parties. Additionally, Petitioner cannot show that entry of a particular plea agreement would have resulted in a less severe judgment or sentence. For these reasons, this claim is rejected as meritless.

### B.    Failure to Investigate and Present Additional Evidence at Trial

Petitioner's second claim alleges that trial counsel was ineffective in failing to adequately investigate and/or interview certain witnesses and failing to investigate and obtain evidence supportive of Petitioner's version of events [Doc. 1 p. 7–9]. "Under

*Strickland*, 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Stermer v. Warren*, 959 F.3d 704, 739 (6th Cir. 2020) (quoting *Strickland*, 466 U.S. at 691). A petitioner is entitled to relief based on a violation of this duty only upon a showing of prejudice, that is, a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694.

Petitioner alleges that trial counsel was ineffective for failing to: (1) investigate claims of domestic abuse against government rebuttal witness and Petitioner's former husband, Kelvin Robinson [Doc. 1 p. 7], (2) seek out "documentary proof" in support of Petitioner's explanation for certain trips she made from Georgia to Tennessee that the government claimed were for the purpose of transporting cocaine [*id.*], (3) interview Sheila Hines and Hyacinth Bryant, who Petitioner claims "would have testified to the fact that for most of the time [Petitioner] is accused of transporting drugs . . . she neither owned or had use of a vehicle" [*id.* at 8; *see also id.* at 20–21], and (4) "interview the 'nosy' neighbor or the Fayette County Sheriff officer who responded to the dispute" involving the neighbor [*id.* at 8].

First, with respect to Petitioner's arguments related to domestic abuse claims against Mr. Robinson and the dispute with the "nosy neighbor," the Court notes that Petitioner fails to identify what exculpatory evidence such investigations would have revealed. Nor does Petitioner explain how this additional evidence would have led to a different verdict. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving

20

the court to . . . put flesh on its bones." *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted). Thus, without any facts to support a notion of ineffectiveness or prejudice, these claims are meritless. *Cf. United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009) (declining to review a claim that counsel was ineffective for not conducting further investigation because the record did not show what information could have been further investigated, what that investigation would have shown, or how it might have alternated the outcome).

Next, the additional evidence that Petitioner claims trial counsel was deficient for failing to acquire through adequate investigation and present at trial is, as Petitioner concedes [Doc. 1 p. 7], cumulative. Petitioner testified that (1) she "was in a very abusive marriage" with Mr. Robinson [Doc. 307 p. 96, No. 3:13-cr-071], (2) she traveled from Georgia to Tennessee on certain occasions to take money to codefendant Demond White's mother, codefendant Hope White, for a power bill on one occasion [*Id.* at 91–93] and to take Ms. White a birthday gift on another [*Id.* at 93–94], (3) for seventeen (17) months she "didn't even have a car" [*Id.* at 95], and (4) she had gotten into a dispute with the "nosy neighbor" [*Id.* at 107–09]. Thus, the record conclusively establishes that trial counsel proffered evidence as to each point that Petitioner claims the additional evidence would have supported, and in general, counsel is not deficient for failing to present cumulative evidence. *See United States v. Foreman*, 323 F.3d 498, 504 (6th Cir. 2003); *Leija v. Elo*, 9 F. App'x 500, 501 (6th Cir. 2001) ("[T]rial counsel cannot be faulted for failing to call a defense witness whose testimony would have been, at best, cumulative and, in part,

detrimental to the theory espoused by [the petitioner]."); *Kelly v. United States*, Nos. 2:11-cr-87 & 2:15-cv-62, 2017 WL 3160608, at *6 (E.D. Tenn. July 25, 2017) ("Counsel was not ineffective for not calling every possible witness, especially where the testimony, as here, is cumulative."). Also, the cumulative nature of the evidence that the investigations at issue would have presumably uncovered undermines a conclusion that trial counsel's failure to perform such investigations was objectively unreasonable. After all, *Strickland* teaches that "a reasonable decision that makes particular investigations unnecessary" does not constitute deficient performance. 466 U.S. at 691. Furthermore, Petitioner cannot show that she was prejudiced by a failure to investigate and present this cumulative evidence because "[a]t best, the additional evidence would have tangentially corroborated certain aspects of [Petitioner's] testimony," and at bottom, the evidence would not have directly undermined the government's substantial evidence of Petitioner's guilt. *See Foreman*, 323 F.3d at 504–05 (dismissing *Strickland* claim for failure to present additional evidence where the defendant had testified as to each fact the additional evidence would have addressed and substantial evidence of guilt was admitted).

Petitioner seems to argue that trial counsel's failure to proffer this additional evidence, its cumulative nature notwithstanding, prejudiced her because it would have bolstered her credibility given that she testified as to these facts [Doc. 1 p. 7]. Specifically, she claims that if trial counsel had adequately investigated Petitioner's version of events, the evidence that she anticipates he would have discovered—Petitioner's description of

22

which is decidedly vague [Doc. 1 p. 7][9]—would have "bolstered" her credibility if introduced at trial [*Id.*]. Similarly, she claims, had trial counsel interviewed Ms. Hines and Ms. Bryant, and presented their testimony at trial, such testimony would have "len[t] credibility" to her own testimony [*Id.*]. But where the petitioner herself testified to all the facts that the additional evidence might have supported, she cannot establish prejudice to overcome the presumption that the decision not to further investigate and present additional evidence on those facts would have been anything other than sound trial strategy. *Kelly*, 2017 WL 3160608, at *6 (quoting *Foreman*, 323 F.3d at 504). Such is the case here.

The Court also notes that some of this additional evidence, namely portions of the proposed testimony of Ms. Hines and Ms. Bryant, do not corroborate Petitioner's testimony but rather, are inconsistent therewith. Specifically, Ms. Bryant was willing to testify that Petitioner "was without transportation . . . for a period of two years prior to her arrest" [Doc. 1 p. 20], and Ms. Hines would have testified that Petitioner was without a car "from July 2011 to October 2012 when she purchased a vehicle" [*Id.* at 21]. But these statements are inconsistent with Petitioner's testimony that she lost her car in 2010 [Doc. 307 p. 88, No. 3:13-cr-071] and that she did not have a car for seventeen (17) months and had to borrow a car to travel to Knoxville [*Id.* at 95]. These inconsistencies belie Petitioner's

---

[9] Petitioner's description of what evidence such an investigation would have uncovered is: "verifi[cation of] the child's date of birth and . . . documentary proof of the other purchases/payments" [Doc. 1 p. 7]. Without a more specific "indication of what an investigator might have discovered [and an explanation of] how that information would have changed the outcome of the trial," Petitioner cannot establish prejudice on this claim. *Robson*, 307 F. App'x at 911 ("To show prejudice the defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient conduct, the result of the trial would have been different." (citing *Strickland*, 466 U.S. at 694)). This claim can be rejected as meritless on this basis as well.

23

contention that Ms. Hines and Ms. Bryant's testimony would have "bolstered her credibility" and establish that Petitioner cannot show a reasonable probability that, but for trial counsel's alleged failure to interview these witnesses and present their anticipated testimony at trial, the result of this case would have been different. *See Foreman*, 323 F.3d at 504 (finding no prejudice where the additional evidence that defense counsel failed to introduce was cumulative, unreliable, and/or unfavorable to defendant's case and did not undermine the government's case against defendant).

Moreover, in light of the other evidence introduced at trial, these individual's proposed testimony is plainly immaterial and thus is not exculpatory. Specifically, as the government puts it, "Whether or not petitioner *owned* a vehicle during the entire period of time she was alleged to have participated in the conspiracy is not dispositive" [Doc. 3 p. 8]. This is because the government presented evidence that Petitioner transported cocaine to Tennessee using rental vehicles [*E.g.*, Doc. 307 p. 135, No. 3:13-cr-071] and introduced videos showing Petitioner driving a vehicle in Knoxville in April and May 2013. Government's Exhibit 8. Thus, additional evidence showing that Petitioner did not *own* a vehicle during portions of the timeframe of conspiracy is not exculpatory. And as the Sixth Circuit has determined, "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004); *see also Foreman*, 323 F.3d at 504. The Court therefore finds that the record conclusively establishes that defense counsel's failure to call Ms.

Hines and Ms. Bryant to testify about whether Petitioner owned a vehicle cannot sustain a *Strickland* claim.

For the reasons discussed, the Court finds all of Petitioner's claims related to trial counsel's alleged failure to adequately investigate and present additional evidence are without merit.

### C.    Closing Argument and Cross-Examination of Witnesses

Petitioner's final claim is directed at trial counsel's closing argument and cross-examination of certain witnesses [Doc. 1 p. 12].  Specifically, Petitioner argues that trial counsel's closing argument was deficient because it was "a mere 10 paragraph[s]" and failed to point out some unspecified "factual inaccuracies" in the government's case [*Id.*]. She also alleges that trial counsel was deficient for not cross-examining government witnesses, namely codefendants Demond White and his mother, Hope White, about alleged variations in their description of "the transport bag" and on the issue of whether Petitioner delivered clothes to Ms. White [*Id.*].  And she argues that trial counsel's failure to cross-examine Mr. Robinson about the allegations of domestic violence against him also constitutes ineffective assistance of counsel [*Id.*].

"The right to effective assistance of counsel extends to closing arguments." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citations omitted).  Nonetheless, great deference is afforded to defense counsel's strategic decisions in his closing argument due to "the broad range of legitimate defense strategy at that stage."  *Id.* at 6. As the Supreme

Court has explained:

> Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas.

*Id.* (citations omitted). Additionally, should a petitioner clear this high hurdle to show deficient performance in closing argument, she must also show prejudice. *See Strickland*, 466 U.S. at 694.

Similarly, the "strong presumption that counsel's conduct falls within the range of reasonable professional assistance" and thus constitutes "sound trial strategy" applies to defense counsel's cross-examination strategy. *Strickland*, 466 U.S. at 688; *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017). And because the discretion traditionally enjoyed by defense counsel in deciding how to examine witnesses is so broad, claims attacking such decisions are "effectively insulated" from review. *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001); *see also Leonard*, 846 F.3d at 848 ("Counsels traditionally enjoy 'discretion over deciding which witnesses to call and how to examine them.'" (quoting *Carter v. Mitchell*, 829 F.3d 455, 471 (6th Cir. 2016))). Again, should a petitioner clear this high hurdle, she must also show prejudice. *See Leonard*, 846 F.3d at 848–49; *Moss v. Hofbauer*, 286 F.3d 851, 865 (6th Cir. 2002).

None of these claims entitles Petitioner to relief because she cannot rebut the strong presumption in favor of finding trial counsel's decisions in cross-examining government witnesses and delivering his closing argument were sound strategic decisions.

26

First, trial counsel's decision to keep his closing argument brief and focus it on the government's witnesses' overall lack of credibility [*See* Doc. 308 p. 29–32], instead of focusing more directly on specific "factual inaccuracies" of the government's case [Doc. 1 p. 12] does not constitute deficient performance. The length of a closing argument alone is not dispositive. After all, "it might sometimes make sense to forgo closing argument altogether." *Gentry*, 540 U.S. at 6; *see also Guysinger v. Warden, Noble Corr. Inst.*, No. 2:19-cv-774, 2019 WL 6310060, at *11 n.1 (S.D. Ohio Nov. 25, 2019), *adopted and aff'd*, 2020 WL 772332, at *1 (S.D. Ohio Feb. 18, 2020). Looking more holistically at trial counsel's closing argument, the Court finds that, while a more extensive closing argument focusing on specific inaccuracies may have been more persuasive to some jurors, trial counsel opted for a brief, wholesale attack on the witnesses' credibility in light of their criminal convictions and bias in favor of the government. Presumably, this decision was based on trial counsel's strategic assessment of this particular jury, and as discussed, such assessments are afforded great deference. *See Gentry*, 540 U.S. at 6 ("[W]hich issues to sharpen and how best to clarify them are questions with many reasonable answers"). In light of this deference, and because Petitioner has not overcome the strong presumption that trial counsel's tactical decisions were sound trial strategy, the Court finds this claim meritless.

Second, Petitioner's suggestion that Demond and Hope White contradicted one another in their description of "the transport bag" and on the issue of whether Petitioner brought clothes to Ms. White is an overstatement of the record. Rather, testimony related

27

to any transport bag was vague and indicated that no one particular bag was used each time [*See, e.g.*, Doc. 306 p. 181 (Demond White's testimony); Doc. 307 p. 40 (Hope White's testimony), No. 3:13-cr-071]. And Mr. White's testimony with regard to whether Petitioner ever delivered clothes to Ms. White was limited to the fact that *Mr. White* did not have any clothes to send to his mother [Doc. 306 p. 198, No. 3:13-cr-071]. He did not address the issue that other witnesses testified to, that is, that *Petitioner* had clothes from the store where she worked to give to Ms. White [Doc. 307 p. 41, 57, 90, 103–04, No. 3:13-cr-071].

Because there is no clear contradiction between the testimony of the witnesses on these points, trial counsel cannot be said to have been objectively unreasonable in deciding not to attempt to impeach these witnesses based on a contradiction that the record reveals did not exist. Additionally, the record shows that trial counsel chose different methods of impeachment that were reasonably effective [*See id.* at 225–28 (impeaching Mr. White as to his history of dishonesty, criminal convictions, and bias toward the government in light of his plea deal); 265–70 (impeaching Ms. White on similar points). *See Moss v. Olson*, 699 F. App'x 477, 487 (6th Cir. 2017) ("The idea that trial counsel may have been 'more effective[]' in his impeachment had he taken another course is precisely the sort of second-guessing of a tactical judgment that *Strickland* counsels against." (citing *Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014))). And to the extent their testimony could be interpreted as contradictory or inconsistent, such would have been apparent from the witnesses' descriptions alone, and Petitioner has not explained what further probing each

28

of these witnesses on the other's testimony on these points would have accomplished (i.e., how "the result of the proceeding would have been different" but for the failure to cross-examine the witnesses on these issues). *Strickland*, 466 U.S. at 694.

Lastly, Petitioner's claim regarding trial counsel's failure to cross-examine Mr. Robinson about allegations of domestic violence against him also fails. Petitioner dedicates one sentence in her motion to this argument: "Counsel failed to ask about Kelvin Robinson's domestic violence history" [Doc. 1 p. 12]. As the Court has noted, "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Cole*, 359 F.3d at 428 n.13. Even so, the Court notes that cross-examining Mr. Robinson about domestic violence allegations "held little use as an impeachment tool," given that such alleged acts do not involve an element of dishonesty, *Pillette v. Berghuis*, 408 F. App'x 873, 891 (6th Cir. 2010), and trial counsel used different methods of impeachment that were reasonably effective [*See* Doc. 307 p. 135–39 (cross-examining Mr. Robinson on his willingness to participate in drug trafficking and questioning his honesty in testifying that he was unaware of the purpose of one of his trips accompanying Mr. White, who he knew to be a drug dealer, from Georgia to Tennessee), No. 3:13-cr-071]. *See Moss*, 699 F. App'x at 487 ("The idea that trial counsel may have been 'more effective[]' in his impeachment had he taken another course is precisely the sort of second-guessing of a tactical judgment that *Strickland* counsels against." (citing *Esparza*, 765 F.3d at 624)). Accordingly, the Court finds that Petitioner cannot overcome the "strong presumption" that trial counsel's cross-examination strategy was reasonable.

29

Nor can she show a reasonable probability that, but for counsel' alleged errors in cross-examining Mr. Robinson, the result of this case would have been different, *Strickland*, 466 U.S. at 687–88, 694. This claim is also meritless.

### D. Motion to Supplement

After the government filed its response to the instant motion, Petitioner sought an extension of time to file a reply [Doc. 4]. On February 7, 2019, the Court granted the motion, allowing Petitioner thirty (30) days to file a reply [Doc. 5]. A copy of the order mailed to Petitioner was returned as undeliverable [Doc. 6]. *See* E.D.TN. LR 83.13 ("It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. Notification of a change of address must be accomplished by filing a Notice with the Clerk and service of the Notice upon all other parties within 14 days of the change of address. . . . The failure of a *pro se* plaintiff to timely respond to an order or pleading addressed to the last address provided to the Clerk may result in dismissal of the case or other appropriate action. Parties proceeding *pro se* shall be expected to be familiar with and follow the Federal Rules of Civil Procedure and these rules."). Petitioner has yet to reply.

Petitioner had, however, filed a Motion to Amend and Supplement 2255 [Doc. 346, No. 3:13-cr-071] on March 26, 2018, in which she asserts, for the first time, allegations of ineffective assistance of counsel arising out of trial counsel's performance during the

30

sentencing phase of Petitioner's criminal case.[10]  Proposed amendments and supplements to a § 2255 motion must be filed within § 2255(f)'s one-year statute of limitations.  When a petitioner does not petition for a writ of certiorari from the Supreme Court following an unsuccessful direct appeal of her conviction, the one-year limitations period starts when the ninety-day time period for filing a petition for certiorari expires.  *Clay v. United States*, 537 U.S. 522, 525 (2003).  Here, Petitioner filed a direct appeal of her conviction, which was affirmed by the Sixth Circuit [Doc. 330, No. 3:13-cr-071] with its mandate issuing on August 26, 2016 [Doc. 333, No. 3:13-cr-071], and she did not petition for a writ of certiorari.  Thus, Petitioner's time to file a § 2255 motion, and any amendments or supplements thereto, ended on November 25, 2017.  While Petitioner timely filed her initial § 2255 motion [Doc. 1] in August 2017, she did not file her motion to amend and supplement [Doc. 346, No. 3:13-cr-071] until March 26, 2018, well after the expiration of the time to file such a motion.[11]  Accordingly, because it is untimely, the motion [*Id.*] will be **DENIED**.

_____

[10]  In this filing, Petitioner also elaborates on her allegation of ineffective assistance of counsel arising out of plea negotiations [Doc. 346 p. 4, No. 3:13-cr-071].  Those arguments are addressed *supra* note 8.

[11]  The Court recognizes that a claim raised in an untimely supplemental pleading can be deemed to have been filed on the same date of a timely original § 2255 motion if the supplemental claim "relates back" to the original § 2255 motion.  Fed. R. Civ. P. 15(c).  In the § 2255 context, an untimely motion to amend or supplement does not "relate back" if it raises a new ground for relief involving different facts than those claims raised in the original § 2255 motion.  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  Here, Petitioner does not argue that the claims in her filing relate back to her initial § 2255 motion.  Perhaps because they do not.  The claims in her supplement relate to trial counsel's performance during the sentencing phase of the underlying criminal case [Doc. 346, No. 3:13-cr-071].  Specifically, she claims trial counsel's alleged failure to argue that she was a minor participant in the conspiracy and that she was therefore entitled an adjustment under USSG § 3B1.2 constitutes ineffective assistance of counsel.  These claims clearly raise a

31

## IV.  Conclusion

The Court finds that Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255, and her motion to vacate, set aside or correct sentence [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.  A hearing is unnecessary in this case.  The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.  *See* Fed. R. App. P. 24.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE.**  28 U.S.C. § 2253; Fed. R. App. P.  22(b).  Petitioner's motion [Doc. 346, No. 3:13-cr-071] to amend and supplement her § 2255 motion will also be **DENIED**.  A Judgment will enter.

IT IS SO ORDERED.

s/ Thomas A. Varlan_____
UNITED STATES DISTRICT JUDGE

---

new ground for relief involving different facts than those claims raised in the original § 2255 motion.  As such, these newly raised claims are time-barred by the one-year statute of limitations.  To the extent Petitioner's arguments in her "Amendment to 2255" relate back to her original motion, those arguments are addressed *supra*, notes 8 & 10.